IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BERNARD ELLERBE, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-1231-CFC |
| | : | |
| ROBERT MAY, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

---

Bernard D. Ellerbe. *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION[2]**

September 25, 2020
Wilmington, Delaware

---

[1]Warden Robert May has replaced former Warden Dana Metzger, an original party to this case. *See* Fed. R. Civ. P. 25(d).

[2]This case was originally assigned to the Honorable Gregory M. Sleet and was re-assigned to the undersigned judge on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Bernard D. Ellerbe's Petition for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1)  The State filed an

Answer in opposition, to which Petitioner filed a Reply. (D.I. 14; D.I. 19)  For the

reasons discussed, the Court will deny the Petition.

## I.   BACKGROUND

> On June 25, 2014, [Petitioner] was stopped after police observed him engage in an apparent hand-to-hand drug transaction through his car window. [Petitioner] sped away when the police approached his car, and in the high-speed evasion that ensued, [Petitioner] wrecked his car. When removing [Petitioner] from the wreckage, the police found more than 260 individual glassine bags of heroin in [his] lap and nearly $12,000 in his pockets.
>
> [Petitioner] was indicted for several drug offenses and on charges of reckless endangering, reckless driving, and disregarding a police signal. The drugs seized from [Petitioner] were sent to a Drug Enforcement Administration ("DEA") laboratory where they were analyzed by a forensic chemist on December 17, 2014.

*Ellerbe v. State*, 161 A.3d 674 (Table), 2017 WL 1901809, at *1 (Del. 2017).  In January

2015, a Delaware Superior Court jury convicted Petitioner of drug dealing, aggravated

possession of heroin, possession of drug paraphernalia, two counts of first degree

reckless endangering, disregarding a police officer's signal, and reckless driving. (D.I.

14 at 1); *see also State v. Ellerbe*, 2016 WL 4119863, at *1 (Del. Super. Ct. Aug. 2,

2016).  The Superior Court sentenced him to eighteen years of imprisonment at Level

V, followed by decreasing levels of supervision. *See Ellerbe*, 2016 WL 4119863, at *1.

Petitioner filed a notice of appeal. (D.I. 14 at 2)  In August 2015, while his appeal was

2

pending, Petitioner filed a *pro se* motion for reduction of sentence. *Id.* The Superior Court deferred decision on the motion during the pendency of Petitioner's direct appeal. (D.I. 18-2 at 189-190)  In September 2015, Petitioner voluntarily withdrew his appeal. *Id.* at 190.  The Superior Court denied Petitioner's motion for reduction of sentence on January 11, 2016.  *Id.* at 187-192.  Petitioner did not appeal that decision.

In December 2016, this time represented by counsel, Petitioner filed a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  The Superior Court denied the Rule 61 motion in August 2016, and the Delaware Supreme Court affirmed that decision in May 2017.  *See Ellerbe*, 2016 WL 4119863, at *4; *Ellerbe*, 2017 WL 1901809, at *4.  Petitioner filed a second Rule 61 motion, which the Superior Court summarily dismissed.  *See State v. Ellerbe*, 2017 WL 4271207 (Del. Super. Ct. 26, 2017).  Petitioner did not appeal that decision.  Petitioner filed the instant § 2254 Petition in 2017.  (D.I. 1 at 5, 7; D.I. 3)

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure

3

that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does

4

not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson,* 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo,* 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman,* 501 U.S. at 749; *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that

5

the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

---

[3]*Murray*, 477 U.S. at 496.

6

States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner asserts two Claims in his timely-filed Petition: (1) defense counsel provided ineffective assistance by failing to impeach the DEA forensic chemist who

7

analyzed the drugs seized in his case with evidence of a pending DEA disciplinary proceeding; and (2) defense counsel provided ineffective assistance by failing to challenge the DEA forensic chemist's use of the hypergeometric sampling method to analyze the drugs in Petitioner's case. (D.I. 1 at 5, 7; D.I. 3) The State filed an Answer, arguing that Claim One should be denied as meritless and Claim Two should be denied as procedurally barred. (D.I. 14 at 7-19)

## A.  Claim One

Petitioner presented the ineffective assistance of counsel allegation contained in Claim One to the Delaware Supreme Court on post-conviction appeal. The Court denied the Claim as meritless. Given these circumstances, habeas relief will only be available if the Delaware Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

8

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard as governing Petitioner's instant ineffective assistance of counsel contention. *See Ellerbe*, 2017 WL 1901809, at *3. As a result, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal

9

habeas relief is precluded "so long as fairminded jurists could disagree on the

correctness of the state court's decision." *Id.* at 101.

The following background information provides helpful information for evaluating

Claim One:

> [Petitioner] went to trial in late January 2015. A week before trial, an official from the DEA disclosed to the prosecutor that, on July 1, 2014, the DEA's Board of Professional Conduct issued a two-day suspension without pay to the forensic chemist who analyzed the drugs in [Petitioner's] case in December 2014. The disciplinary sanction arose from the forensic chemist's alleged violation of a DEA safety protocol when handling drug evidence in a case in November 2013. Because the forensic chemist was a key witness in the State's case against [Petitioner] and evidence about the safety violation, if permitted by the court, could be used by the defense to impeach the chemist at trial, the prosecutor informed defense counsel about the disciplinary sanction.
>
> Under Delaware Uniform Rule of Evidence 403 ("DRE 403"), before evidence can be used to impeach the credibility of a witness, the Superior Court must determine if the probative value of the evidence outweighs its prejudicial effect. To make the determination under DRE 403 in [Petitioner's] case, the trial judge conducted *voir dire* of the chemist, outside the presence of the jury, to determine if [Petitioner's] defense counsel should be allowed to use evidence of the disciplinary sanction to impeach the chemist at trial.
>
> During *voir dire*, the chemist testified that the disciplinary matter arose from her alleged violation of a DEA safety policy when she neglected to wear a protective mask when testing a large quantity of cocaine in 2013. The chemist testified that her appeal from the Board's decision was still pending before a DEA appeals official, and that, for the pendency of the disciplinary matter, she continued examining drug evidence for the DEA and to testify in cases. The chemist further testified that, if the Board's decision is upheld by the appeals official, she will continue in her duties with the DEA, and that there was no allegation that she failed to follow any protocol in [Petitioner's] case.

10

At the conclusion of *voir dire*, defense counsel advised the court and opposing counsel that he would not be moving to use evidence of the disciplinary sanction to impeach the chemist because, in counsel's view, the evidence was not relevant in [Petitioner's] case. In this excerpt from the *voir dire* transcript, the trial judge agreed with defense counsel's assessment as follows:

> That's fine, I think that's appropriate after hearing the entirety of it. Under Rule 403 I do believe that probative value would be substantially outweighed by the danger of unfair prejudice in this particular case, mainly confusing the issues and really trying to have some mini trial of a personnel matter that hasn't even been fully determined yet. If there's a question as to a circumstance of not following protocol that changed the weight, the analysis or something like that, it may be more probative, but in this case, it's quite frankly not taking a safety precaution that she should have taken during testing.
>
>       *            *            *
>
> And as noted through the testimony and cross-examination, even that matter and whether or not she will be held to some sanction from her own agency for violating some safety protocol or laboratory protocol of their own and again, had nothing to do with the validity of the actual testing, findings or the like, but their own personal safety standard that they set, then the court might find some greater probative value.
>
> If not, and I think that the defense is absolutely correct in understanding that this probably would not lead to anything that is useful, and therefore I think it is appropriate to be excluded under Rule 403, even if there was a request to put it in.

When trial resumed, the chemist took the stand and testified about the tests she conducted on the drug evidence seized in

11

> [Petitioner's] case and the scientific method she used to determine that the evidence was heroin with a net weight of 3.8 grams. In relevant part, the chemist explained that, after analyzing 27 of the 262 individual glassine bags and finding that 27 bags contained heroin, she used a hypergeometric sampling method to determine with 95% accuracy that 90% of the remaining 235 bags also contained heroin.

*Ellerbe*, 2017 WL 1901809, at *1-2.

In his Rule 61 motion, Petitioner argued that defense counsel did not effectively cross-examine the forensic chemist on her disciplinary record for purposes of impeachment. *See Ellerbe*, 2016 WL 4119863, at *2. The Superior Court rejected the argument for failing to satisfy either prong of the *Strickland* standard. First, given defense counsel's thorough *voir dire* exploration of the forensic chemist's disciplinary action, the Superior Court concluded that defense counsel reasonably determined that the forensic chemist's unrelated 2013 safety violation was of little value because it had no impact on the validity of the testing that took place in Petitioner's case. *See id.* at *3. Next, the Superior Court concluded that Petitioner did not establish prejudice under *Strickland*, because he failed to demonstrate that the trial court would have permitted defense counsel to cross-examine the forensic chemist regarding the disciplinary action. *See Ellerbe*, 2016 WL 4119863, at *4. Even if the trial court would have permitted the cross-examination in question, the Superior Court noted that Petitioner failed to show a reasonable probability of a different outcome. For instance, nothing in the record indicated that the forensic chemist failed to follow any DEA testing protocol or other applicable standards in Petitioner's case, and the chemist's failure to follow a safety standard more than a year before Petitioner's case would have had minimal, if any,

12

impact on the jury's consideration.  In addition, there was overwhelming evidence

presented against Petitioner at trial, including the police officers' visual observations of

the drug interactions between Petitioner and the white car, Petitioner's high speed

evasion of police, the large amount of heroin found on Petitioner's lap when pulled from

the car, and the large amount of cash found on his person.  *Id*.

The Delaware Supreme Court affirmed the Superior Court's decision "for the

reasons stated in the Superior Court's order of August 2, 2016." *Ellerbe*, 2017 WL

1901809, at *4.  The Delaware Supreme Court opined, "[w]ith no specifics offered as to

how the additional cross-examination now suggested would have changed the outcome

of the trial, [Petitioner] cannot succeed on a claim of ineffective assistance of counsel."

*Id*.

After reviewing Petitioner's instant complaint about defense counsel's actions

within the context of the aforementioned record and the applicable legal framework, the

Court concludes that the Delaware state courts did not unreasonably apply *Strickland*

when denying Claim One.  An attorney's decision as to how to cross-examine a witness

is strategic in nature and will not constitute the basis for an ineffective assistance if that

decision is reasonably made.  *See Revel v. Pierce*, 66 F.Supp.3d 517, 527 (D. Del.

2014). The record demonstrates that defense counsel thoroughly explored the forensic

chemist's disciplinary action during *voir dire*.  (D.I. 18-2 at 107-110); *see also Ellerbe*,

2016 WL 4119863, at *3-4.  As defense counsel explained in his Rule 61 affidavit, since

"[t]here was no testimony showing that [the] event had any impact on the testing in this

case," he concluded that the "unrelated event . . . did not have any probative value

13

concerning the test results in this case." (D.I. 18-2 at 197)  This explanation demonstrates that defense counsel engaged in a well-reasoned analysis when deciding not to bring the chemist's prior disciplinary record to the attention of the jury. (D.I. 18-2 at 195-197)  Consequently, defense counsel's decision not to cross-examine the forensic chemist about her disciplinary record did not fall below an objective standard of reasonableness.

In addition, Petitioner cannot demonstrate a reasonable probability that the outcome of his proceeding would have been different but for defense counsel's failure to cross-examine the forensic chemist on her disciplinary record.  Most significantly, following the *voir dire* of the chemist, the trial court stated that it would deny any application to use the disciplinary action to impeach the chemist's testimony regarding the testing of the drugs in Petitioner's case.  (D.I. 17-14 at 6-7)  Even if the trial court would have permitted the cross-examination in question, Petitioner has failed to demonstrate how knowledge that the chemist was disciplined for failing to wear a safety mask would have altered the jury's consideration of his guilt.  In addition, there was overwhelming evidence of drug dealing presented against Petitioner at trial even without the results of the drug report or the chemist's testimony.  Viewing these circumstances together demonstrates that the Delaware state courts reasonably determined that Petitioner was not prejudiced by defense counsel's failure to cross-examine the forensic chemist.  Accordingly, the Court will deny Claim One as meritless.

14

## B. Claim Two

In Claim Two, Petitioner contends that defense counsel provided ineffective assistance by failing to challenge the DEA forensic chemist's use of the hypergeometric sampling method to analyze the drugs in Petitioner's case. Since Petitioner presented Claim Two to the Delaware state courts for the first time on postconviction appeal, the Delaware Supreme Court only reviewed the argument for plain error under Delaware Supreme Court Rule 8. *See* Del. Sup. Ct. R. 8 (claims not raised in the trial court are reviewed only in the interests of justice under Rule 8). By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263–64(1989), that its decision rested on state law grounds. Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed. *See Campbell v. Burris*, 515 F.3d 172, 182 (3d Cir.2008). As a result, the Court cannot review the merits of Claim Two absent (1) a showing of cause for the default and prejudice resulting therefrom or (2) a showing that a miscarriage of justice will occur if the claim is not reviewed.

Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner attempts to establish cause by blaming postconviction counsel for not raising Claim Two to the Superior Court in his Rule 61 motion. The argument is unavailing. In *Martinez*, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim

of ineffective assistance of trial counsel. *Id.* at 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id.* at 9-10, 16-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some merit." *Id.* at 13.

*Martinez*'s limited exception to the procedural default doctrine cannot be used in this proceeding to excuse Petitioner's default of Claim Two because the underlying ineffective assistance of trial counsel claim is not substantial. First, the record belies Petitioner's assertion that defense counsel failed to challenge the chemist's use of the hypergeometric sampling method to analyze the drugs. *See Ellerbe*, 2017 WL 1901809, at *3 (noting that the "record reflects that [trial] counsel questioned the chemist on the reliability of the hypergeometric method and the accuracy of the chemist's findings."). Second, contrary to Petitioner's assertion, the chemist did not use the hypergeometric sampling method to determine the total weight of the heroin by weighing a certain number of bags and multiplying the consistent weight from those bags by the total number of bags. (D.I. 3 at 1) Rather, the chemist only used the hypergeometric model to determine the probability inference of identifying the substance, and then determined the weight by another process. (D.I. 18-2 at 109-110, 112-113) Finally, the chemist satisfied the standard set forth in Delaware Rule of Evidence 702 by testifying that the hypergeometric method is considered reliable by the scientific community. *See* DRE 702; *Ellerbe*, 2017 WL 1901809, at *3 (explaining that

16

the chemist's testimony satisfied the standard set forth in DRE 702).  In short, defense

counsel did not provide ineffective assistance by failing to raise a meritless argument

about the chemist's use of the hypergeometric sampling method.  *See United States v.*

*Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

In the absence of cause, the Court will not address the issue of prejudice.

Additionally, the miscarriage of justice exception to the procedural default doctrine is

inapplicable because Petitioner has not provided any new reliable evidence of his actual

innocence.  Accordingly, the court will deny Claim Two as procedurally barred.

## IV.   MOTION FOR EVIDENTIARY HEARING

Petitioner filed a Motion for an Evidentiary Hearing during the pendency of this

proceeding. (D.I 30)   He asserts that an evidentiary hearing is necessary so that he can

demonstrate cause for his default of Claim Two under the *Martinez* standard.  (D.I. 30 at

3)

Typically, requests for an evidentiary hearing in a federal habeas proceeding are

evaluated under 28 U.S.C. § 2254(e)(2), which provides:

> (2)  If the applicant has failed to develop the factual basis of a
> claim in State court proceedings, the court shall not hold an
> evidentiary hearing on the claim unless the applicant shows
> that
>
> > (A)  the claim relies on –
> >
> > > (i)   a new rule of constitutional law, made
> > > retroactive to cases on collateral review by the
> > > Supreme   Court,   that   was   previously
> > > unavailable; or

17

> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In cases where a petitioner is not barred from obtaining an evidentiary hearing under § 2254(e)(2), the decision to grant a hearing rests in the discretion of the court. *See Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010); *see also Lee v. Glunt*, 667 F.3d 397, 406 (3d Cir. 2012). When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro v. Landrigan*, 550 U.S.465, 474 (2007). Additionally, the Third Circuit has held that a district court has discretion to grant an evidentiary hearing to evaluate if a petitioner's procedural default may be excused. *See Goldblum v. Klem*, 510 F.3d 204, 221 (3d Cir. 2007); *Cristin v. Brennan*, 281 F.3d 404, 416-17 (3d Cir. 2002).

Here, an evidentiary hearing is unnecessary to evaluate whether Petitioner's procedural default of Claim Two should be excused under *Martinez*, because the Court has already concluded that the ineffective assistance of counsel allegation in Claim Two lacks "some merit." Therefore, the Court will deny Petitioner's Motion for an Evidentiary Hearing.

## V.    CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability may be issued only when a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Consequently, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the foregoing reasons, the Court will deny the instant Petition without an evidentiary hearing.  An appropriate Order will be entered.

19